## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 22-cv-

CHRIS STORZ, on behalf of himself and all
other plaintiffs similarly situated, known and
unknown

        Plaintiff,

v.

MAXFUND, INC., D/B/A MAXFUND
ANIMAL ADOPTION CENTER, A
COLORADO CORPORATION, KATHY      ***JURY DEMAND***
GAINES, individually and SALINA
DAVIDSON, individually

        Defendants.

---

## COMPLAINT
---

NOW COMES Plaintiff, **CHRIS STORZ,** ("Plaintiff" or "named Plaintiff"), on behalf of

himself and all other Plaintiffs similarly situated, by and through his attorneys, John W. Billhorn

and Samuel D. Engelson of Billhorn Law Firm, and for his Complaint against Defendants,

**MAXFUND, INC., D/B/A MAXFUND ANIMAL ADOPTION CENTER, KATHY GAINES, INDIVIDUALLY,**

**AND SALINA DAVIDSON, INDIVIDUALLY** (the "Defendants" or "Maxfund"), states as follows:

## I.    NATURE OF ACTION

1.    This action is brought under the Fair Labor Standards Act, 29 U.S.C. §201, *et seq.*

("FLSA"), the Colorado Minimum and Pay Standards Order #38, 7 CCR 1103-1 *et seq*

("COMPS") and the Colorado Wage Act, C.R.S. § 8-4-101, *et seq.*

## II.    JURISDICTION AND VENUE

2.     Jurisdiction arises under the provisions of the Fair Labor Standards Act, 29 U.S.C. §§ 206-207, and for the supplemental Colorado statutory claims, pursuant to 28 U.S.C. §1367.

3.     Venue lies in the District of Colorado in that during all times relevant to the employment relationship, Plaintiff performed work in this district and is a resident of this district and Defendants are or were engaged in business in this district.

## III.    THE PARTIES

4.     Defendant, MAXFUND, INC., D/B/A MAXFUND ANIMAL ADOPTION CENTER (hereinafter referred to as "MAAC") is a Colorado non-profit corporation that owns and operates an animal shelter and a veterinary center that provide animal adoption, wellness and education services.

5.     MAAC's primary business address is 720 West 10th Avenue in Denver, Colorado.

6.     MAAC  is an "enterprise" engaged in commerce or in the production of goods for commerce within the meaning of Section 29 U.S.C. §203(s)(1)(A)(i) and based upon information and belief formed after reasonably inquiry, satisfies the minimum annual gross sales dollar amount required by 29 U.S.C. §203(s)(1)(A)(ii).

7.     MAAC ordered, used and handled goods and materials and other products which moved in interstate commerce prior to being used or purchased in Colorado.

8.　　Upon information and belief, MAAC also took under its care animals, including dogs and cats, that arrived at MAAC's premises from other states and thus moved in interstate commerce prior to being cared for and housed in Colorado and whose travel was arranged by Maxfund.

9.　　During all relevant times, MAAC was acting directly or indirectly in the interest of the employer in relation to the employee Plaintiff and therefore, as defined under both the federal and state statutes relied upon, is an "employer."

10.　　MAAC, through their director(s) and executive-level managers, oversaw all operations of MAAC, including business strategy and daily operations, fundraising, regulatory compliance, volunteer coordination, and was responsible for assigning tasks, creating and distributing schedules, staff supervision, wage policies and otherwise oversaw all aspects of MAAC's business operations and interactions.

11.　　Plaintiff was directed to, and did, communicate all employment issues, including the wage and hour violations asserted herein, to MAAC. MAAC in turn responded to those communications with the authority described herein.

12.　　Defendant **KATHY GAINES** (hereinafter referred to individually as "Gaines") is the Executive Director of MAAC.

13.　　 Gaines oversaw all operations of MAAC, including business strategy and daily operations, staffing, fundraising, compliance, budgeting, and was responsible for related executive functions. Gaines was also responsible for assigning tasks, creating and distributing schedules, shelter and staff supervision, and oversaw all aspects of MAAC's business operations and stakeholder interactions.

14.     In her capacity as Executive Director, Gaines was vested with the authority to carry out the wage and hour policies of MAAC.

15.     Plaintiff was directed to, and did, communicate all employment issues, including the wage and hour violations asserted herein, to Gaines and Gaines in turn responded to those communications with the authority described herein.

16.     Thus, at all times relevant hereto Gaines was acting directly or indirectly in the interest of the employer in relation to the employee Plaintiff and therefore as defined under both the federal and state statutes relied upon, is an "employer".

17.     Defendant **SELINA DAVIDSON** (hereinafter referred to individually as "Davidson") is the supervising manager of  MAAC's daily operations.

18.     In her capacity as supervising and day-to-day manager of MAAC, Davidson was vested with the authority, along with Gaines, to implement and carry out the wage and hour practices of MAAC.

19.     In her capacity as supervising manager of MAAC, Davidson was vested with the authority to implement and carry out the wage and hour practices of MAAC.

20.     Davidson acted as the primary manager of MAAC and, along with Gaines, was responsible for assigning tasks, creating and distributing schedules, shelter and staff supervision, and oversaw all aspects of MAAC's daily operations.

21.     Plaintiff was directed to, and did, communicate all employment issues, including the wage and hour violations asserted herein, to Davidson and Davidson in turn responded to those communications with the authority described herein.

22.     Thus, at all times relevant hereto Davidson was acting directly or indirectly in the interest of the employer in relation to the employee Plaintiff and therefore as defined under both the federal and state statutes relied upon, is an "employer".

23.     Plaintiff, **CHRIS STORZ,** is a former employee of Defendants. Plaintiff was initially hired as a Kennel Technician ("Kennel Tech"). Plaintiff was then briefly transitioned to Veterinary Technician ("Vet Tech") before being assigned to the Kennel Manager position. Lastly, Plaintiff worked for Defendants as an Animal Behaviorist.

24.     Plaintiff was compensated as both an hourly and salaried employee over his tenure with Maxfund.

25.     While working for Maxfund as a Kennel Tech, Vet Tech and part of his tenure as Kennel Manager, Plaintiff was paid hourly. However, while an hourly employee, Plaintiff was not paid overtime for all hours worked over 40 in individual work weeks, as Maxfund paid Plaintiff for fewer overtime hours than were actually worked.

26.     During the latter half of Plaintiff's tenure as Kennel Manager and the entire portion of Plaintiff's employment as Animal Behaviorist, Plaintiff was paid via salary which compensated him for all hours worked each week, including those over 40 in individual work weeks. As a salaried employee, Plaintiff did not receive overtime premiums of one and one-half times his regular rate of pay.

27.     Through his employment as Kennel Manager and Animal Behaviorist, Plaintiff did not exercise independent discretion or judgment on matters of significance, manage two (2) or more full time employees, or direct Maxfund's overall strategic business operations.

28.     During Plaintiff's employment with Maxfund, Plaintiff spent a substantial amount

of his working time either performing non-exempt manual work in kennels and other back-of-the-house areas of Maxfund's facility or otherwise performing duties which involved manual labor and did not require exercise of independent discretion and judgment.

29.    Plaintiff participated and engaged in essential job duties and tasks on a daily or weekly basis that directly related and contributed to Maxfund's primary business of providing animal shelter and health services. These tasks performed by Plaintiff:

a)    were not primarily office or non-manual;

b)    were not directly related to management or general business operations;

c)    did not include the primary duty of discretion and independent judgment on matters of significance, and;

d)    required Plaintiff to work in excess of 40 hours per week without receiving time and one-half compensation for those hours in excess of 40 in a workweek.

30.    As such, Plaintiff was at times misclassified as a salary-exempt employee. Maxfund should have at all times compensated Plaintiff as an hourly employee entitled to overtime premiums for hours worked over 40 in individual work weeks.

31.    Throughout all times pertinent to Plaintiff's claims herein, Maxfund applied a common policy as to Plaintiff and other employees at their Colorado animal shelter, in that Maxfund failed to compensate employees all earned overtime wages by a) not compensating employees for all overtime hours actually worked, or b) implementing allegedly improper salary exemption(s)

32.    Additionally, throughout all times pertinent to Plaintiff's claims herein, Maxfund applied common policies, developed by Maxfund's executive board, executives and managers,

that were embedded in its management policies and procedures relative to Plaintiff and other employees.

33.     As a result of the common policies described above, Plaintiff and members of the Plaintiff Class were improperly denied overtime pay for work in excess of 40 hours in a work week.

34.     Common questions of law exist among the claims of Plaintiff and members of the Plaintiff Class in that each claims rests upon a challenge of Maxfund's claimed pay practices, exception(s) or exemption(s) to federal and state wage laws.

35.     All other unnamed Plaintiffs, known and unknown ("members of the Plaintiff Class", "Plaintiff Class" or "similarly situated Plaintiffs"), are past or present hourly or salaried employees either a) did not receive overtime premiums for all hours worked over 40 in individual work weeks or b) were paid on a salary basis and did not receive overtime premiums for hours worked in excess of 40 in a workweek as described herein.

36.     As an employee(s) performing duties for an enterprise engaged in commerce, the named Plaintiff and all members of the Plaintiff Class were also engaged in commerce as defined by the FLSA.

## IV.   STATUTORY VIOLATIONS

### Collective Action Under the Fair Labor Standards Act

37.     Pursuant to the Fair Labor Standards Act, 29 U.S.C. §216(b), Count I of this action is brought by Plaintiff as an opt-in representative or collective action, on behalf of himself and other Plaintiffs similarly situated who have been damaged by Defendants' failure to comply with 29 U.S.C. §201 *et seq.*, to recover unpaid overtime wages and additional damages. Count II alleges

a willful violation of the FLSA and seeks an additional third year of limitations. Count III seeks liquidated damages under the Fair Labor Standards Act, Section 260.

**Colorado Overtime and Minimum Pay Standards Order, #38**

38.    Pursuant to the Colorado Minimum and Pay Standards Order #38, 7 CCR 1103-1 *et seq*., Count IV of this action is brought by Plaintiff to recover unpaid overtime wages earned on or before the date three (3) years prior to the filing of this action. Each and every Plaintiff who joins this case in the future shall specifically adopt and assert the claims made under this Count IV. The claims asserted by Plaintiff herein under COMPS are proper for certification under Federal Rule of Civil Procedure 23.

**Colorado Wage Act**

39.    Pursuant to the Colorado Wage Act, §8-4-101, *et seq*., C.R.S., Count V of this action is Plaintiff to recover earned, vested and determinable unpaid overtime wages earned on or before the date three (3) years prior to the filing of this action. Each and every Plaintiff who joins this case in the future shall specifically adopt and assert the claims made under this Count V. The claims asserted by Plaintiff herein under the CWA are proper for certification under Federal Rule of Civil Procedure 23.

## V.    FACTUAL ALLEGATIONS RELEVANT TO ALL COUNTS

40.    Plaintiff, at all times pertinent to the cause of action, was employed by Defendants.

41.    Plaintiff's employment as Kennel Tech, Vet Tech, Kennel Manager and Animal Behaviorist were integral and indispensable to Maxfund's business, as without the work performed by Plaintiff within each of those roles, Maxfund would be unable to run their animal shelter and adoption center properly or competently.

42.    Plaintiff was hired by Maxfund in approximately August 2021.

43.    Plaintiff was initially hired as a Kennel Tech. Plaintiff worked as a Kennel Tech from approximately August 2021 to November 2021.

44.    As a Kennel Tech, Plaintiff performed manual duties related to care of sheltered dogs, such as feeding, walking and bathing dogs, organizing and cleaning kennels, and assisting with basic dog training.

45.    As a Kennel Tech, Plaintiff was classified as an hourly, non-exempt employee and was paid approximately $16.00 per hour.

46.    As a Kennel Tech, Plaintiff clocked in and out in accordance with Maxfund's timekeeping system. Plaintiff's work hours are reflected by time punches Plaintiff made within Maxfund's timekeeping system.

47.    As a Kennel Tech, Plaintiff worked 6 or 7 days per week. Plaintiff was typically at Maxfund's shelter performing his Kennel Tech duties from approximately 6:00 a.m. to 6:00 p.m.

48.    As a Kennel Tech , Plaintiff worked at least approximately 70 hours per week. On a regular basis, Plaintiff worked in excess of 70 hours each week, up to and exceeding 80 hours per week.

49.    However, even though Plaintiff worked approximately 70 or more hours each week, Maxfund did not pay Plaintiff for all hours worked. On a regular basis during Plaintiff's tenure as Kennel Tech, Maxfund only paid Plaintiff a fraction of his actual overtime hours worked each week.

50.    Typically, Maxfund would only pay Plaintiff five (5) or (10) hours of overtime each week, or some other amount as otherwise determined by Gaines and Davidson.

51.    Although Plaintiff worked upwards of 30 to 40 hours of overtime each week,

Plaintiff was advised by Davidson that neither she nor Gaines would approve that much overtime, even though those hours were already worked.

52.     Plaintiff was informed by Maxfund, including Gaines and Davidson, that Maxfund would not pay him for all overtime hours worked each week due to budget constraints and other reasons not specified to Plaintiff.

53.     While Plaintiff worked as many as 40 overtime hours each week, Maxfund (including Gaines and Davidson) was aware of the substantial overtime work being performed by Plaintiff. Maxfund accepted the benefits of the substantial overtime work performed by Plaintiff but did not pay him for such hours.

54.     As a result, Plaintiff was permitted and suffered to work dozens of hours each week as a Kennel Tech for which he was not paid any wages, including both the underlying straight time rate and half-time overtime premium. Plaintiff was denied his entire 1.5x rate for dozens of hours over 40 worked each week.

55.     In approximately November 2021, Plaintiff was transitioned to the role of Vet Tech. Plaintiff's work and compensation circumstances as Vet Tech remained the same as his tenure as Kennel Tech.

56.     In approximately December 2021, after Plaintiff worked approximately one week as a Vet Tech, Maxfund again transitioned Plaintiff to Kennel Manager.

57.     As Kennel Manager, Plaintiff was advised that he would be solely responsible for managing Kennel Techs regarding all aspects of their work.

58.     Upon the transition to Kennel Manager, Davidson began keeping track of Plaintiff's work hours rather than having Plaintiff clock in and out each day. However, Davidson did not

properly record all hours worked by Plaintiff, instead recording only hours that Maxfund wanted or was otherwise able to pay.

59.     Upon Plaintiff's transition to Kennel Manager, Plaintiff still performed many of the same duties he did as Kennel Tech, including walking, feeding and bathing dogs, cleaning the kennels, and related manual labor duties. Plaintiff spent at least half of his working hours each week performing manual labor and other hourly, non-exempt type work. On a regular basis, Plaintiff listed himself on the schedule as a Kennel Tech because he was performing those duties and otherwise acting in that role.

60.     As Kennel Manager, Plaintiff was unable to, and did not, provide significant input on personnel decisions, including hiring, firing, discipline and compensation related to Kennel Techs, or any other hourly employees based on their performance.

61.     All discipline and other personnel decisions related to Kennel Techs were handled by Davidson and Gaines.

62.     Further, as Kennel Manager, Plaintiff had no input and made no contributions to performance evaluations of Kennel Techs or any other employees. Those functions were handled by Davidson and Gaines.

63.     As Kennel Manager, Plaintiff still worked at least approximately 70 or 80 hours per week.

64.     During the first approximately 3 to 5 months of Plaintiffs' tenure as Kennel Manager, Plaintiff was paid as an hourly employee and received approximately $20.00 per hour.

65.     In approximately May 2022, Maxfund converted Plaintiff's Kennel Manager position to a salary-exempt role. Plaintiff's weekly salary was approximately $800 or $900.

66.     Upon the transition of Plaintiff's Kennel Manager role to salary, Plaintiff was invited to a meeting with Davidson and Gaines where Davidson and Gaines explained that Maxfund needed to pay Plaintiff a certain amount per week in order to legally pay him a salary. Maxfund did not ask Plaintiff for his input on his classification or pay.

67.     Upon Plaintiff's transition from hourly to salary compensation as Kennel Manager, his job title and day-to-day job duties remained the same.

68.     In approximately May 2022, following Plaintiff's transition to a salary compensation structure as a Kennel Manager, Maxfund added additional manual labor duties to Plaintiff's daily tasks, where Maxfund required Plaintiff to take on maintenance duties in the absence of a dedicated maintenance worker.

69.     While employed as Kennel Manager, Plaintiff performed manual labor duties such as repairing fences around the Maxfund property, organizing and cleaning garages, welding, cleaning and repairing kennels, changing bulbs, painting ordering supplies and landscaping, including winterizing property and shoveling snow.

70.     From approximately May 2022 to August 2022, Plaintiff assumed the building maintenance role full-time, such that he was performing exclusively manual labor work. During this time, Plaintiff also performed Kennel Manager duties, which involved some overlapping manual labor duties (i.e., cleaning and repairing kennels, caring for animals).

71.     During this time from approximately May 2022 to August 2022 when Plaintiff was performing additional manual labor duties related to building and property maintenance, Plaintiff was still paid via salary.

72.     In approximately June 2022, Plaintiff was transitioned to a role as Animal Behaviorist from Kennel Manager.

73.     As Animal Behaviorist, Plaintiff was paid a weekly salary of approximately $900.

74.     As an Animal Behaviorist, Plaintiff worked approximately 60-80 hours per week. Later in his tenure as Animal Behaviorist, Plaintiff's schedule was reduced from seven (7) days per week to six (6).

75.     As Animal Behaviorist, Plaintiff was not required to clock in and out. Instead, his hours were still kept by Davidson and otherwise reflected on weekly schedules.

76.     As Animal Behaviorist, Plaintiff's primary job duty was to train dogs with certain behavioral issues, including certain dogs that were returned to Maxfund's shelter by adoptees. Plaintiff performed his job duties in kennels and other places on and off Maxfund's premises.

77.     While an Animal Behaviorist, Plaintiff's job duties still included many manual duties such as feeding, walking, playing with and otherwise attending to dogs. Plaintiff also fitted dogs for harnesses, formed dog play groups, trained difficult dogs, assisted/monitored walk logs, and administered other dog training. Plaintiff still performed some of the same duties he performed as both Kennel Tech and as the maintenance attendant.

78.     As Animal Behaviorist, Plaintiff did not directly manage any other employees. Plaintiff was the only Animal Behaviorist employed by Maxfund.

79.     During Plaintiff's tenure as Animal Behaviorist, Plaintiff did not originate, develop, create or substantially participate in the development of any specific dog training programs. Plaintiff does not hold any degree in animal science, animal training, animal psychology or any other related field. Rather, Maxfund provided the substance of dog training techniques to Plaintiff.

80.     During the period from approximately May 2022 to January 2023, Plaintiff was at all times compensated on a salary basis that paid him for all hours worked. As such, Plaintiff did not receive overtime premiums of one and one-half his hourly rate of pay for hours worked over 40 while he was employed as either Kennel Manager or Animal Behaviorist.

81.     In approximately January 2023, Plaintiff was terminated by Maxfund.

82.     Over the course of Plaintiff's entire employment with Maxfund, he was denied overtime premiums both as an hourly and salaried employee.

83.     When Plaintiff was an hourly employee, he was entitled to be paid for all hours worked over 40 at a rate of one and one-half times his regular rate of pay.

84.     While Plaintiff worked as a salaried employee, his day-to-day job duties were:

a)      not primarily office or non-manual;

b)      not directly related to management or general business operations;

c)      did not include the primary duty of discretion and independent judgment on matters of significance, and;

d)      required Plaintiffs to work in excess of 40 hours per week without receiving time and one-half compensation for those hours in excess of 40 in a workweek.

85.     As a result, Plaintiff was at times misclassified by Maxfund as a salary-exempt employee.

86.     At all times during Plaintiff's employment, he should have been classified as a non-exempt hourly employee and paid overtime premiums for all hours worked over 40 in individual work weeks.

87.     Plaintiff and members of the Plaintiff Class worked or work in excess of forty (40) hours in a workweek without pay for hours worked over forty (40) at a rate of time and one-half their regular hourly rate of pay, pursuant to the requirements of the federal and state statutes herein relied upon.

88.     Maxfund has, both in the past and presently, willfully employed Plaintiff and members of the Plaintiff Class without pay at a rate of one and one-half times their rates of pay for hours worked in excess of 40 in a workweek.

89.     The total number of hours worked by Plaintiff and members of the Plaintiff Class, and therefore the total number of overtime hours for which additional compensation is owed, is information substantially, if not completely, within the control and possession of Maxfund, in that Maxfund recorded or should have recorded such hours pursuant to the record keeping requirements found Title 29 CFR, Part 516. To the extent Maxfund lacks the records required by 29 CFR Part 516, Plaintiff and members of the Plaintiff Class will be capable of providing reasonable estimates of that time, as permitted by law.

90.     The non-compliant practices as alleged herein are common to Plaintiff and all other employees.

91.     During his entire employment with Maxfund, Plaintiff, and members of the Plaintiff Class, were paid every other week. Plaintiff, and members of the Plaintiff Class, were denied overtime pay through either of the practices alleged herein.

92.     Plaintiff, and members of the Plaintiff Class on a regular basis worked in excess of forty (40) hours in a workweek without pay at a rate of time and one-half their hourly rates of pay for such hours pursuant to the requirements of the federal and state law.

93.     Plaintiff and members of the Plaintiff Class were not exempt from the overtime provisions of the FLSA or COMPS. Likewise, Plaintiff and members of the Plaintiff Class were entitled to the wage protections afforded by the CWA, which applies to timely payment of earned overtime wages. As such, Plaintiff and similarly situated employees were and are entitled to overtime premiums of time and one-half their hourly rates of pay for hours worked over 40 in individual work weeks.

94.     The claims brought herein by the named Plaintiff are based on non-compliant practices and policies implemented by Maxfund and are identical or similar to the claims of other past and present employees who were subject to the same non-compliant policies and practices alleged herein. Those past and present employees are entitled to receive Notice of these proceedings and afforded opportunity to join their individual claims.

## COUNT I

## VIOLATION OF FAIR LABOR STANDARDS ACT

1-94.    Paragraphs 1 through 94 are re-alleged and incorporated as though set forth fully herein as paragraphs 1 through 94 of this Count I.

95.     Plaintiff, and members of the Plaintiff Class, were each an "employee" pursuant to 29 U.S.C. §203(e).

96.     Defendants were each an "employer" pursuant to 29 U.S.C. §203(d).

97.     Plaintiff, and members of the Plaintiff Class, were not exempt from the maximum hours provisions of 29 U.S.C. §207.

98.     Pursuant to the Fair Labor Standards Act, 29 U.S.C. §201 *et seq.*, the named Plaintiff, and all other Plaintiffs similarly situated, known and unknown, are entitled to

compensation for all hours worked and compensation at a rate not less than one and one-half times their regular rates of pay for all hours worked in excess of forty (40) in any week during the two (2) years preceding the filing of this action.

99.    Defendants have at all times relevant hereto failed and refused to pay compensation to their workers/employees, including the Named Plaintiff herein and all other Plaintiffs similarly situated, known and unknown as described above.

WHEREFORE, Plaintiff, on behalf of himself and all other Plaintiffs similarly situated, known and unknown, respectfully requests this Court to enter an order awarding:

(a)    back pay equal to the amount of all unpaid overtime compensation for the two (2) years preceding the filing of this Complaint, according to the applicable statute of limitations;

(b)    prejudgment interest with respect to the total amount of unpaid overtime compensation;

(c)    Plaintiff's reasonable attorneys' fees and costs incurred as a result of Defendants' violations of the Fair Labor Standards Act; and

(d)    such additional relief as the Court deems appropriate under the circumstances.

## COUNT II

## WILLFUL VIOLATION OF THE FAIR LABOR STANDARDS ACT

1-99.    Paragraphs 1 through 99 of Count I are realleged and incorporated as though set forth fully herein as Paragraphs 1 through 99 of Count II.

100.    Maxfund's actions as complained above were done with Maxfund's knowledge that the compensation policies and practices at issue were in violation of the statutes alleged, or with a reckless disregard for whether the policies and practices were in violation of those statutes.

101.    Through legal counsel as well as industry experience and custom, and the extraordinary resources available to Maxfund, Maxfund possessed ample access to the regulations and statutory provisions relating to the municipal, state and federal laws recited herein, but either failed to seek out such information and guidance or did seek out the information and guidance but failed to adhere to the principles of compliance as stated.

102.    Pursuant to the Fair Labor Standards Act, Plaintiff and all other employees similarly situated, past or present, are entitled to compensation at a rate not less than one and one-half times their regular rates of pay for all hours worked in excess of forty (40), in the three (3) years preceding the filing of this complaint.

WHEREFORE, Plaintiff, on behalf of himself and all other Plaintiffs similarly situated, known and unknown, respectfully request this Court to enter an order awarding:

(a)    back pay equal to the amount of all unpaid compensation for one (1) additional year, totaling three (3) years preceding the filing of this Complaint;

(b)    prejudgment interest with respect to the amount of unpaid overtime compensation;

(c)    Plaintiff's reasonable attorneys' fees and Court costs incurred as a result of Defendants' violation of the Fair Labor Standards Act; and

(d)    such additional relief the Court deems appropriate under the circumstances.

## COUNT III

### LIQUIDATED DAMAGES
### UNDER THE FAIR LABOR STANDARDS ACT

1-102.  Paragraphs 1 through 102 of Count II are re-alleged and incorporated as though set forth fully herein as Paragraphs 1 through 102 of Count III.

103.    In denying Plaintiff and members of the Plaintiff Class compensation as described above, Defendants' acts were not based upon good faith or reasonable grounds.

104.    Through legal counsel as well as industry experience and custom, and the extraordinary resources available to Maxfund, Maxfund possessed ample access to the regulations and statutory provisions relating to the municipal, state and federal laws recited herein, but either failed to seek out such information and guidance or did seek out the information and guidance but failed to adhere to the principles of compliance as stated.

105.    The Named Plaintiff and all other past and present employees similarly situated, known and unknown, are entitled to liquidated damages equal to the amount of all unpaid compensation, pursuant to 29 U.S.C. §260.

WHEREFORE, Plaintiff, on behalf of himself and all other Plaintiffs similarly situated, known and unknown, respectfully request this Court to enter an order awarding:

(a)    liquidated damages equal to the amount of all unpaid compensation;

(b)    Plaintiff's reasonable attorneys' fees and costs incurred as a result of Defendants' violation of the Fair Labor Standards Act; and

(c)    such additional relief the Court deems appropriate under the circumstances.

## COUNT IV

### SUPPLEMENTAL STATE LAW CLAIM
### VIOLATION OF THE COLORADO OVERTIME
### AND MINIMUM PAY STANDARDS ORDER, #38

1-105.    Paragraphs 1 through 105 of Count III are re-alleged and incorporated as though set forth fully herein as Paragraphs 1 through 105 of this Count IV.

106.    As described in the foregoing paragraphs, Defendants' compensation policies and

practices are in violation of the Colorado Minimum and Pay Standards Order #38, 7 CCR 1103-1 *et seq*.

107.    Plaintiff, and members of the Plaintiff Class, were each an "employee" under COMPS 7 CCR 1103-1.5(A) and were not exempt from the minimum or overtime wage provisions of COMPS 7 CCR 1103-3.1, 4.1.

108.    Defendants were each an "employer" as defined by COMPS 7 CCR 1103-1.6(A).

109.    Under COMPS 7 CCR 1103-4.1, for all weeks during which Plaintiff and members of the Plaintiff Class worked more than forty (40) hours, they were entitled to be compensated at a rate of one and one-half times their regular hourly rates of pay.

110.    Defendants' failure and refusal to pay overtime wages for hours worked in excess of 40 per week was a violation of the maximum hour provisions of COMPS 7 CCR 1103-4.1.

111.    COMPS 7 CCR 1103-8.1(A) provides that an employer who fails to pay the required amount of overtime wages due an employee under the law shall be liable to the underpaid employee or employees for the unpaid balance of the full amount of overtime wages due and reasonable attorneys' fees and costs.

WHEREFORE, Plaintiff, on behalf of himself and all other Plaintiffs similarly situated, known and unknown, respectfully request this Court to enter an order awarding:

(a)    back pay equal to the amount of all unpaid compensation for the three (3) years preceding the filing of this Complaint;

(b)    prejudgment interest with respect to the amount of unpaid overtime compensation;

(c)      Plaintiff's reasonable attorneys' fees and Court costs incurred as a result of Defendants' violation of the Colorado Overtime and Minimum Payment Standards Order, #38; and

(d)      such additional relief the Court deems appropriate under the circumstances.

## COUNT V

### SUPPLEMENTAL STATE LAW CLAIM
### VIOLATION OF THE COLORADO WAGE ACT

1-111.  Paragraphs 1 through 111 of Count IV are re-alleged and incorporated as though set forth fully herein as Paragraphs 1 through 111 of this Count V.

112.      As described in the foregoing paragraphs, Defendants' compensation policies and practices are in violation of the Colorado Wage Act, C.R.S. §8-4-101, *et seq*.

113.      The CWA defines wages as "[a]ll amounts for labor or service performed by employees", regardless of whether "the amount is fixed or ascertained by the standard of time". Wages, as defined by the CWA, are governed by the Act once the amounts are "earned, vested, and determinable". CWA, C.R.S. §8-4-101(14(a)(I)-(III).

114.      Plaintiff, and members of the Plaintiff Class, were each an "employee" under CWA, C.R.S. §8-104-101(5) and were not exempt from the CWA's protections.

115.      Defendants were each an "employer" as defined by CWA, C.R.S. §8-104-101(6) and were not exempt from compliance with the CWA.

116.      Pursuant to CWA, C.R.S. §8-4-101(14)(a)(II)-(III), Plaintiff and members of the Plaintiff Class, who were misclassified as exempt employees, worked hours in excess of 40 in individual work weeks which required pay at time and on-half their regular hourly rates of pay.

117.    Once Plaintiff and members of the Plaintiff Class worked hours over 40 in individual work weeks, they earned overtime compensation, although it was not paid. As such, the overtime premiums for which Plaintiff and members of the Plaintiff Class were not paid were and are "wages" as defined by the CWA, and therefore subject to the requirements of the CWA.

118.    Plaintiff and members of the Plaintiff Class did not receive overtime premiums of one and one-half times their regular rates of pay for hours worked over 40 in individual work weeks.

119.    Pursuant to CWA, C.R.S. §8-4-109(3)(b), if an employer fails to pay an employee their earned, vested and determinable wages as set forth by the CWA within fourteen (14) days of service of a written demand, the employee is entitled to a penalty of a) 125% of the amount of wages due up to and including $7,500; and b) 50% of the amount for wages due over and above the first $7,500 due.

120.    Plaintiff's Complaint herein serves as a valid written demand under the CWA, C.R.S. §8-4-101(15) and -109(3)(a) for unpaid overtime wages on behalf of himself and members of the Plaintiff Class .

121.    Should Maxfund fail to tender the demanded compensation in the amounts due to Plaintiff and members of the Plaintiff Class pursuant to the CWA within fourteen (14) days, Plaintiff and members of the Plaintiff Class will be entitled to recover penalties described by to CWA, C.R.S. §8-4-109(3)(b) and (c).

122.    Pursuant to CWA, C.R.S. §8-4-109(3)(c), if the employee can prove that the employer's failure to pay wages due under the Act, each of the penalties set forth under CWA, C.R.S. §8-4-109(3)(b) shall increase by 50%.

123.     Maxfund's failure and refusal to pay earned overtime wages, as demanded in writing herein within the fourteen (14) day period described by the CWA, C.R.S. §8-4-109(3)(a.5), was willful and in bad faith.

124.     Plaintiff and members of the Plaintiff Class are owed all earned, unpaid overtime wages and statutory penalties, including increased penalties for willful violations of the CWA.

125.     Per CWA, C.R.S. §8-4-110, Plaintiff and members of the Plaintiff Class are entitled to attorneys' fees and costs incurred prosecuting claims under the CWA.

WHEREFORE, Plaintiff, on behalf of himself and those similarly situated, known and unknown, respectfully requests this Court to enter an order awarding:

(a)     unpaid, earned and vested overtime wages;

(b)     statutory penalties of 125% of the amount of wages due up to and including $7,500; and b) 50% of the amount for wages due over and above the first $7,500 due;

(c)     additional statutory penalties of 50% on top of the penalties prescribed by CWA, §8-4-109(3)(b) for Maxfund's willful violation of the CWA;

(d)     Plaintiff's reasonable attorneys' fees and Court costs incurred as a result of Defendants' violations of the Colorado Wage Act; and

(f)     such additional relief the Court deems appropriate under the circumstances.

Respectfully submitted,

*Electronically Filed 01/26/2023*

/s/ Samuel D. Engelson
Samuel D. Engelson
Colorado Bar No: 57295

John William Billhorn
Attorneys for Plaintiff, and those similarly

situated, known and unknown

BILLHORN LAW FIRM
7900 E. Union Ave., Suite 1100
Denver, Colorado 80237
(720)-386-9006
53 W. Jackson Blvd., Suite 1137
Chicago, Illinois 60604
(312)-853-1450